Wright, J.
It is not necessary to pass upon the demurrer' to the petition, as the case itself settles all the questions involved.
It will be seen that the hogs were properly in the custody of the Brighton Stock Yards ; that Kaufman & Eishburne bought and agreed to pay for them, and subsequently declined to do so, because the stock yards had no right to sell.
It appears to us that the stock yards must be held to possess such authority as is adequate to the emergency. They made proper and diligent search for the owner without success. A just discharge of their duties did not require that they should keep the animals until a bill of expense should swallow up their entire value. They were called upon to do exactly that which the interests of the owners demanded they should do. If, on fair consideration of all the circumstances — of future falling markets, of disease and death, of the difficulty and expense of keeping the property — sound judgment dictated, and necessity required, that the animals be sold; if this was really for the best interests of all concerned, the stock yards had the right to sell, at least as against those to whom they sold.
The position that the necessity of the case justifies the exercise of a fair discretion, and authorizes the sale of property, where such property is perishable in its nature, and is likely to become entirely lost, where owners are unknown, finds strength in the fact that the statutes of the state have inaugurated a policy looking to this precise end. Section 8 of the law “providing for the disposition of unclaimed freight,” etc., S. & S. 94, is as follows: “ If any perishable property shall so be conveyed as freight as aforesaid, and remain unclaimed until danger of great depreciation, or *440 the same shall he refused, or the owner thereof can not he found, then such persons, associations, or companies may sell at private sale or auction, without giving notice, for the best price it will bring, and apply the proceeds as aforesaid.” The disposition of the money referred to is this: the proceeds are held for one year for the owner, and then turned into the common school fund. Within five years, the owner may reclaim it from the auditor of state.
This statute authorizes to be done only that which without it sound judgment, governed by correct intention, would dictate.
The stock yards appear to have acted in the utmost good faith. They sold to Kaufman & Fishburne for the highest market price, and one of the stipulations of that sale was that the stock yards were to hold the money as a special deposit for the owner when he should arrive. What right have these purchasers now to say that the money shall go elsewhere ? To repudiate the agreement when they got the property upon the faith of it ? In the face of these facts and such a contract, the refusal to pay on the part of the purchasers seems extraordinary. They base their refusal on the ground that the animals were “ strays.” But under the statute on that subject, to which counsel refer, we are unable to see that these hogs can be considered as coming under that class of “ strays.” It can not be said that they were at any time found “straying,”in the popular acceptation of that term. They were first discovered in the Brighton pens. The “strays” spoken of in our statute are those which are “ running at large.” This can not be predicated of hogs securely p’enned.
The statute also refers to strays being “ taken up.” We can not see that the stock yards did any “ taking up ” within the legal meaning of that term.
Nor do we see how the trustees can successfully claim that the hogs “ strayed ” into Millcreek township, when the testimony shows that a man bought and drove them there for slaughtering purposes. Nor can we see that there was any such “running at large” in Millcreek township as *441 would justify the trustees in impounding, as they did, the price for which the animals sold. The particular manner in which the hogs reached their ultimate destination is not otherwise detailed than in a single sentence of Kaufman’s testimony: “We drove them to Millereek township, and slaughtered them there.” Erom this alone the court are unable to say'that they were “strays” and “running at large,” as the trustees desire us to do. The trustees, doubtless, with a high sense of their public duties, seemed to thiuk that these animals were waifs, and as nobody owned them, they would. This idea seems also to. have been shared by Kaufman & Eishburne and the city of Cincinnati ; still in law, we think, the position is not tenable.
The action of the Superior Court was entirely correct. That court found that the stock yards were entitled to recover, and as they consented that the money might be put in the hands of the city to await future events, plaintiffs in error can not object.
The judgment is therefore affirmed.
Scott, Chief Judge/ Day, Johnson, and Ashburn, JJ., concurred.